UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

TYRAL TINSLEY                                    )
on behalf of himself                             )
and all others similarly situated,               )
                                                 )
                          Plaintiffs,            )
                                                 )
v.                                               )        Case No.  1:14CV00026 ACL
                                                 )
COVENANT CARE SERVICES, LLC,                     )
et al.,                                          )
                                                 )
                          Defendants.            )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's "Omnibus Motion and Incorporated

Suggestions in Support of Plaintiffs' Motion for Class Certification, Appointment of Class

Representative, and Appointment of Class Counsel" (Doc. 61) and Defendants' Motion for

Summary Judgment (Doc. 72).

## I.    Background[1]

Plaintiffs comprise a group of current and former employees who worked for Defendant

Covenant Care Services, Inc. ("Covenant Care"), a care agency that provides services such as

adult day care for disabled adults.  Plaintiffs represent a group of Independent Support Living

Aides and Lead Independent Support Living Aides ("ISL Aides"), who provide care services to

Defendants' clients.  Lead ISL Aides are essentially the "head cheerleader" of multiple Aides

who work with the same client, but have no managerial responsibility.  ISL Aides are paid

---

[1]Unless otherwise noted, the background facts are taken from Plaintiffs' Third Amended
Complaint, Defendants' Answer, and the pleadings filed in connection with Plaintiffs' Motion
for Class Certification (Docs. 61, 70, 82) and Defendants' Motion for Summary Judgment (Docs.
72, 73, 74, 84, 85).

hourly.  ISL services are provided at the clients' residences, which can include up to two other disabled roommates.  Some ISL clients lease properties from ABC Realty and BKC Properties. ABC Realty is owned in part by Defendant Chris Reagan and his wife Brandee Reagan; and BKC Properties is owned by Warren Reagan, Rebecca Reagan, Chris Reagan, and Brad Reagan.

The Third Amended Complaint alleges that Defendants failed to properly pay Plaintiffs and all other similarly situated employees overtime compensation at a rate of  not less than one-and-one-half times the regular rate of pay for work performed in excess of forty hours per week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 2010 *et seq*., and Missouri law.  Plaintiffs bring the following three claims:  (1)  failure to pay overtime wages to non-exempt employees in violation of the FLSA (Count I); (2) failure to pay overtime wages in violation of Missouri Revised Statute § 290.500, *et seq*. (Count II); and (3) Missouri common law claims for quantum meruit/unjust enrichment for Defendants' failure to pay overtime (Count III).[2]  Plaintiffs seek to recover their back pay, individually and on behalf of the proposed class. They also seek liquidated damages.

Defendants acknowledge that they did not pay ISL Aides overtime compensation and state that Covenant Care classified ISL Aides as exempt employees pursuant to the companionship exemption of the FLSA.  Under the companionship exemption, certain categories of domestic services workers providing services in a household are exempt from overtime protections.  *See* 29 U.S.C. § 213(a)(15).  The exemption applies to employees working in or about a "private home."  29 C.F.R. § 552.3.  Defendants state that Covenant Care began paying ISL Aides overtime for hours worked in excess of forty hours in a week on January 1, 2015, due

---

[2]Plaintiffs have withdrawn FLSA minimum wage and rounding claims alleged in earlier versions of their Complaints.

to new regulations promulgated by the Department of Labor removing the companionship exemption for individuals employed by third-party businesses.

On March 27, 2015, the Court granted Plaintiffs' Unopposed Motion for Conditional Certification Pursuant to 29 U.S.C. § 216(b). Seventeen individuals filed opt-in consents to join this lawsuit as party plaintiffs, although some opt-in Plaintiffs have elected to withdraw or have otherwise been dismissed from the lawsuit.

Plaintiffs filed the instant Motion for Class Certification on August 12, 2015. Defendants filed their Motion for Summary Judgment on the same date as their Response in Opposition to Plaintiff's Motion for Class Certification, September 16, 2015. In their Motion for Summary Judgment, Defendants argue that Plaintiffs' claims fail because Plaintiffs were all properly classified as exempt employees under the FLSA. In the alternative, Defendants request that the Court dismiss Plaintiffs' state law claims because they are preempted by the FLSA, dismiss Plaintiffs' claims for liquidated damages, impose a two-year statute of limitations, and dismiss certain individual Plaintiffs from this action because their claims fail as a matter of law. In response to Defendants' Motion, Plaintiffs filed a request to continue Defendants' Motion for Summary Judgment under Federal Rule of Civil Procedure 56(d).[3] (Doc. 84.)

## II.     Motion for Summary Judgment

### A.      Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party.

---

[3] Plaintiffs request a continuance under Rule "56(f)." Plaintiffs are in fact requesting relief under 56(d), which was moved from 56(f) pursuant to the 2010 amendments to the Federal Rules of Civil Procedure.

*City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show there is doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must set forth specific facts showing there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324.

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). Finally, the court must resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

### B.      Plaintiffs' Rule 56(d) Request

Under Federal Rule of Civil Procedure 56(d), a district court may defer considering a motion for summary judgment if a party opposing the motion "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d); *Chambers v. Travelers Cos., Inc.,* 668 F.3d 559, 568 (8th Cir. 2012). Rule 56(d) reflects the principle that "summary judgment is proper only after the nonmovant has had adequate time for discovery." *Ray v. Am. Airlines, Inc.,* 609 F.3d 917, 923 (8th Cir. 2010) (citation omitted). As such, Rule 56(d) "should be applied with a spirit of liberality." *United*

*States ex. rel. Bernard v. Casino Magic Corp.,* 293 F.3d 419, 426 (8th Cir. 2002) (citation omitted).

Plaintiffs argue that Defendants' Motion for Summary Judgment is premature, in that it was filed prior to the discovery deadline, which has not been established in this case. Plaintiffs further argue that the filing of Defendants' Summary Judgment Motion contemporaneously with its opposition to Plaintiffs' Motion for Class Certification is a clear attempt to dissuade the Court from granting Plaintiffs' Class Certification Motion. Plaintiffs contend that they are entitled to a significant amount of discovery as to all aspects of Defendants' affirmative defenses before responding to Defendants' Summary Judgment Motion.

In support of their Rule 56(d) request, Plaintiffs have submitted the affidavit of their attorney, Lara Owens. (Doc. 84-1.) Ms. Owens states that, due to the nature of this matter (Track 3, Complex), Plaintiffs have refrained from conducting significant merits discovery. Ms. Owens notes that much of the information produced by Defendants was related to determination of whether Plaintiffs are similarly situated for the purpose of collective and class actions. Ms. Owens contends that Plaintiffs have not yet conducted the discovery necessary to oppose Defendants' Motion for Summary Judgment. Ms. Owens states that the discovery Plaintiffs require before responding to Defendants' Motion includes the following: depositions of the twenty-three employees and individual owners who submitted declarations in support of Defendants' Motion, including Rebecca Reagan and Christopher Reagan; depositions of up to nine different property owners to determine the nature of their relationship with Defendants; depositions of company representatives regarding client services agreements, training given to ISL Aides, and facts regarding Defendants' good faith defense; and documents exchanged between Michael Knorr and Defendants regarding Defendants' good faith reliance defense. Ms.

Owens argues that Plaintiffs cannot fully and fairly respond to Defendants' Motion for Summary Judgment at this time and request that the Motion be continued until a date after Plaintiff has had a sufficient opportunity to secure all relevant documents and take depositions necessary to fairly respond to the Motion.

Defendants oppose Plaintiffs' Rule 56(d) request, arguing that extensive discovery has occurred in this action, and that Plaintiffs' claims are ripe for summary judgment. (Doc. 85.) Defendants contend that Plaintiffs have had more than fourteen months to conduct discovery, received over 7,000 pages of documents from Defendants, conducted depositions, and five of the opt-in Plaintiffs have been deposed. Defendants argue that Plaintiffs have the information they need to respond to Defendants' Motion for Summary Judgment.

The Court will grant Plaintiffs' request to stay Defendants' Motion for Summary Judgment as to Defendants' defense that Plaintiffs are exempt employees under the FLSA and as to Defendants' good faith defense. Although significant discovery has been conducted, the focus of the discovery has been on the issues related to collective and class actions. Indeed, the Court contemplated that discovery would be conducted in two stages when it issued the Initial Case Management Order (CMO), delineating dates for discovery related to collective and class certification only. (Doc. 25.) The Court has yet to issue a CMO setting dates for the merits phase of the litigation. It is, therefore, reasonable that Plaintiff would seek additional discovery in order to properly respond to Defendants' argument regarding the central issue in this case of whether Plaintiffs are exempt employees under the FLSA. Thus, Defendants' Motion for Summary Judgment will be stayed as to the issues of whether Plaintiffs are exempt employees, and Defendants' good faith defense. The resolution of individual opt-in Plaintiffs' claims based on exemption will also be stayed.

The other claims raised in Defendants' Motion for Summary Judgment, however, are ripe for disposition, and will be discussed below.

### C.     Discussion

Defendants argue that Plaintiffs' state law claims are preempted by the FLSA. Defendants further argue that Janet Cargill's claims are outside the statute of limitations. The undersigned will discuss these claims in turn.

### 1.     Preemption

Defendants argue that Plaintiffs' state law claims for unpaid overtime are preempted because they are entirely duplicative of their FLSA claims. Defendants contend that the Fourth Circuit, in *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007), held that duplicative state law claims are preempted by the FLSA because they upset the FLSA's enforcement structure.

Plaintiffs contend there is no authority in this Circuit that has concluded that Plaintiffs may not contemporaneously assert claims arising under the FLSA <u>and</u> claims for violations of the Missouri Minimum Wage Maximum Hours Laws, unjust enrichment, and quantum meruit. Plaintiffs cite precedent finding that their state law claims do not depend on establishing a violation of the FLSA because "Missouri's wage laws also provide for the payment of minimum wages and overtime pay." *Robertson v. LTS Mgmt. Servs., LLC,* 642 F. Supp.2d 922, 928 (W.D. Mo. 2008).

The FLSA authorizes workers to file private actions to recover unpaid wages, damages, costs, and attorneys' fees. 29 U.S.C. § 216(b). The FLSA contains a savings clause, which states, "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the

minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter." 29 U.S.C. § 218(a).

State law is preempted if a court determines that (1) Congress expressly preempts state law; (2) Congress has pervasively regulated conduct in a field manifesting its intent to preempt state law; or (3) the state law conflicts with federal law. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 98 (1992); *English v. Gen. Elec. Co.,* 496 U.S. 72, 78–79 (1990); *Huang v. Gateway Hotel Holdings,* 520 F. Supp.2d 1137, 1141 (E.D. Mo. 2007). In the absence of express pre-emptive language, as is the case with the FLSA, the Eighth Circuit Court of Appeals has held that:

> pre-emptive intent may ... be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Qwest Corp. v. Minn. Pub. Utilities Comm'n,* 684 F.3d 721, 726 (8th Cir. 2012). The Eighth Circuit has not addressed the specific issue of whether the remedies under the FLSA are exclusive.

The Court recognizes that the Fourth Circuit has held that the FLSA preempts state law claims that are duplicative of the FLSA claims. *Anderson,* 508 F.3d at 194-95. District courts within the Eighth Circuit, however, have found that the FLSA does not preempt state common law claims similar to those asserted by Plaintiffs. *See Fry v. Accent Mktg. Servs., LLC*, 4:13CV59 CDP, 2013 WL 2403669, at *2 (E.D. Mo. May 31, 2013); *Byrd v. BJC Health System,* 4:11CV1571 HEA, 2013 WL 1581420, *2–3 (E.D. Mo. Apr. 12, 2013); *Davenport v. Charter Communications, LLC,* 4:12CV7 AGF, 2012 WL 5050580, *2–*3 (E.D. Mo. Oct. 12, 2012) (no

preemption of Missouri's Minimum Wage Law, or state law claims for breach of contract, quantum meruit, or unjust enrichment based on the same alleged facts underlying FLSA claim); *Perez–Benites v. Candy Brand, LLC,* 267 F.R.D. 242, 246 (W.D. Ark. 2010) (holding that the plaintiffs' breach of contract claim seeking overtime pay was not preempted by the FLSA; "Most district courts in the Eighth Circuit agree that the FLSA's savings clause ... indicates that the FLSA does not provide an exclusive remedy for its violations."); *Doyel v. McDonald's Corp.,* No. 4:08CV01198 CAS, 2009 WL 350627, at *4 (E.D. Mo. Feb. 10, 2009); *LePage v. Blue Cross & Blue Shield,* No. 08–584 (RHK/JSM), 2008 WL 2570815, *8 (D. Minn. June 25, 2008) ("While Plaintiffs may not obtain double recovery, they are free to pursue relief under the FLSA as well as unjust enrichment.") (citation omitted); *Robertson*, 642 F. Supp.2d at 928 (holding that the FLSA did not preempt state law claims for breach of contract, quantum meruit, and unjust enrichment); *Osby v. Citigroup, Inc.,* 07CV6085 NKL, 2008 WL 2074102, at *2 (W.D. Mo. May 14, 2008); *Bouaphakeo v. Tyson Foods, Inc.,* 564 F. Supp.2d 870, 885 (N.D. Iowa 2008) (holding that the plaintiffs' duplicative claim under Iowa's minimum wage law was not preempted by the FLSA because the claim did not interfere with, frustrate, conflict with, or stand as an obstacle to the goals of the FLSA, and because FLSA does not provide the exclusive remedy for its violations).

The undersigned finds the opinions of the district courts within the Eighth Circuit, including this district, persuasive and adopts the view that the FLSA does not preempt Plaintiffs' state law claims. Due to the factual overlap between FLSA claims and the state wage and hours law claims, "it would illserve the interests of convenience or judicial economy to re-litigate in state court the defendants' pay practices." *Arnold v. Directv*, No. 4:10CV00352 AGF, 2011 WL 839636 at * 8 (E.D. Mo. Mar. 7, 2011) (quoting *Cortez v. Nebraska Beef, Inc.*, 266 F.R.D. 275,

287 (D. Neb. 2010)).  Even if Plaintiffs' state law claims are duplicative of their FLSA claims, the state law claims do not interfere with or stand as an obstacle to the goals of the FLSA.  For the above reasons and because the FLSA does not expressly preempt all state law causes of action, the Court will deny Defendants' Motion for Summary Judgment as to the issue of preemption.

        **2.      Janet Cargill's Claims**

        Defendants argue that Janet Cargill's claims are barred by the statute of limitations.  Ms. Cargill opted-in to this action on May 15, 2015.  (Doc. 53-2.)  Defendants argue that, because Ms. Cargill resigned her employment on February 21, 2012, her claims are barred by the statute of limitations regardless of whether the Court applies a two or three-year statute of limitations.

        Plaintiffs argue that the filing of the class action complaint tolled the statute of limitations applicable to Ms. Cargill's claims.  The Complaint was filed on March 10, 2014.  (Doc. 11.)

        Under the FLSA, claims must be "commenced within two years after the cause of action accrued," unless the violation was "willful," in which case the FLSA extends the statute of limitations to three years.  *See* 29 U.S.C. § 255(a).  An action is commenced under the FLSA when a party files suit, but in the case of a collective action, if a party's name does not appear on the complaint, the action commences with respect to that party when he or she files a written consent to become a part of the collective action.  *Id.* at § 256(b).  As a result, the statute of limitations continues to run until a putative class member elects to join the suit.  *Id.*  The doctrine of equitable tolling permits a plaintiff to sue after the statutory time period has expired if she has been prevented from doing so due to inequitable circumstances.  *Firstcom, Inc. v. Qwest Corp.*, 555 F.3d 669, 675 (8th Cir. 2009).

In this case, the filing of the Complaint did not toll the statute of limitations as to Ms. Cargill's FLSA claim. Rather, the statute of limitations, which is no longer than three years, continued to run until Ms. Cargill filed her opt-in notice. Said notice was filed more than three years after Ms. Cargill resigned her employment. Plaintiffs have not argued that any inequitable circumstances prevented Ms. Cargill from filing her opt-in notice, which would support the application of equitable tolling. Thus, Ms. Cargill's FLSA claims are barred by the statute of limitations.

With regard to Ms. Cargill's state claims, a two-year statute of limitation applies to state law overtime claims, including unjust enrichment and quantum meruit claims. *See Short v. Nat'l Asset Recovery Servs. Inc.*, No. 1:13CV47 SNLJ, 2013 WL 3389053, at * 2 (E.D. Mo. July 8, 2013); *Trapp v. O. Lee, LLC*, 918 F. Supp.2d 911, 914 (E.D. Mo. 2013). The instant Complaint was filed more than two years after Ms. Cargill resigned her employment.

The undisputed facts reveal that Ms. Cargill's FLSA claims and state law claims are barred by the relevant statutes of limitations. Thus, summary judgment will be granted in favor of Defendants as to Ms. Cargill's claims.

## III.    Motion for Class Certification

Plaintiffs seek class certification of their state law claims under Federal Rule of Civil Procedure 23. (Doc. 61.) Plaintiffs request certification of the following class:

> All persons who worked for Defendant as an ISL Aide and/or
> Team Lead from March 2012 to the present, who performed work
> for the Defendant for more than 40 hours in [a] workweek without
> proper compensation.

Plaintiffs also request that Plaintiff Tyral Tinsley be appointed as class representative and Plaintiffs' co-lead counsel of record, The Owens Law Firm and the Employee & Labor Law Group of Kansas City be designated and appointed as Class counsel. Plaintiffs have submitted

evidence in support of their Motion.  (Docs. 61-1 thru 61-10.)  Defendants have filed a Response in Opposition to Plaintiffs' Motion for Class Certification (Doc. 70), along with supporting evidence (Docs. 70-1 thru 70-8).  For the reasons set forth below, Plaintiffs' Motion for Class Certification will be granted.

### A.    Legal Standard

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.  To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with [Federal Rule of Civil Procedure] 23." *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (citations omitted).  Rule 23(a) establishes four prerequisites for class certification:  (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed.R.Civ.P. 23(a).

A plaintiff seeking to maintain a class action must satisfy the Rule 23(a) prerequisites along with at least one provision of Rule 23(b).  *Comcast*, 133 S.Ct. at 1432.  In the instant case, the provision at issue is Rule 23(b)(3) predominance, which requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.R.Civ.P. 23(b).  "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Comcast*, 133 S.Ct. at 1432.

A district court must conduct a "rigorous analysis to ensure that all requirements of Rule 23 have been met."  *Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921, 925 (8th Cir. 2015)

(citation omitted).  This analysis "will frequently entail overlap with the merits" of the parties' claims and defenses because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Comcast,* 133 S. Ct. at 1432; *see also Elizabeth M. v. Montenez,* 458 F.3d 779, 786 (8th Cir. 2006).  However, "[m]erits questions may be considered . . . only to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013).  Although the Court has broad discretion in determining whether to certify a class, in close cases courts should err in favor of certification because the class can be modified as the case progresses.  *See In re Aquila ERISA Litigation*, 237 F.R.D. 202, 207 (W.D. Mo. 2006) (citing *In re Control Data Corp. Securities Litigation*, 116 F.R.D. 216, 219 (D. Minn. 1986)).

### B.    Discussion

#### 1.    Rule 23(a) Requirements

Defendants argue that Plaintiffs cannot meet the requirements of numerosity, typicality, or fair and adequate representation.

##### a.    *Numerosity*

Rule 23(a) requires that Plaintiffs show that the class is so numerous that joinder of all members is impracticable.  Plaintiffs state that Defendants have identified 101 current and former ISL Aides who were paid pursuant to Defendants' policies and practices of compensating employees straight time for all hours worked, rather than overtime compensation for hours worked in excess of forty in a workweek.  Plaintiffs note that the Eighth Circuit has found as few as twenty plaintiffs sufficient to certify a class.  *See Arkansas Educ. Ass'n v. Bd. Of Educ.*, 446

F.2d 763, 765 (8th Cir. 1971).  Plaintiffs therefore argue that the number of ISL Aides working for Defendants meets the numerosity requirement.

Defendants argue that only thirty-one ISL Aides regularly performed work in homes owned by ABC Realty or BKC Properties.  Defendants note that five of those ISL Aides have already opted-in to the FLSA collective action, one of the ISL Aides has withdrawn from this suit, and twenty-two others do not wish to join.  Defendants argue that Plaintiffs cannot demonstrate that joinder is difficult or inconvenient because notice was received by all class members through the FLSA notice procedure.

Plaintiffs respond that Defendants' characterization of the matter as limited to ISL Aides working at specific locations is incorrect.  Instead, Plaintiffs argue that none of the ISL Aides satisfied the companionship exemption because: (1) their job duties do not satisfy the exemption; and (2) the clients did not live in private residences, regardless of whether the Defendants have an ownership interest in residences where the clients reside.  Plaintiffs also argue that the fact that some ISL Aides did not opt in to the litigation is irrelevant to the Rule 23 determination.

Number is but one of several considerations relevant to the joinder impracticability issue. In addition to the size of the class, the Court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 559 (8th Cir. 1982) (*citing Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure* § 1762).  There are no "arbitrary rules" dictating the number of class members necessary to satisfy numerosity.  *Paxton,* 688 F.2d at 559.  "The numerosity requirement must be balanced against the possibility of [numerous] separate trials."  *Bradford v. AGCO Corp.,* 187 F.R.D. 600, 604 (W.D. Mo. 1999) ("This Court finds that a class of twenty to

sixty five members is sufficiently numerous under Rule 23.").  It has been consistently held that joinder is impracticable where the class is composed of more than 40 persons.  Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* Vol. 1, § 3.05 (4th ed.2002).

After reviewing the parties' respective arguments, the Court finds that Plaintiffs have met the numerosity requirement.  The Court agrees with Plaintiffs' contention that the prospective class is broader than merely ISL Aides working in homes owned by ABC Realty or BKC Properties.  Plaintiffs contend that none of the 101 potential class members were properly classified as exempt because their job duties were insufficient to allow them to satisfy the exemption and because they did not work in private homes.  In support of their claim that potential class members were not exempt, Plaintiffs submitted evidence that Covenant Care was informed by the Department of Labor in January 2014 that if clients leased their residences, these facilities were not "private homes."  (Doc. 61-9.)

Defendants' position that the class is restricted to the thirty-one individuals working in homes owned by ABC Realty or BKC Properties is based on their interpretation and application of the companionship exemption.  Defendants have submitted deposition testimony from Defendant Rebecca Reagan identifying the owners of the homes in which clients reside.  (Def's Ex. B.)  As discussed with respect to Plaintiffs' Rule 56(d) Motion, however, Plaintiffs seek to obtain additional evidence regarding the property owners and their relationship with Defendants in order to fully respond to Defendants' exemption argument.  Because the parties have not yet completed discovery on the merits phase of the litigation, Defendants' argument is premature. *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) ("The question at class certification is not whether the plaintiffs have already proven their claims through common evidence").  Joinder of 101 potential class members would be impracticable.

Whether the evidence ultimately supports Plaintiffs' position that none of the potential class members are exempt will be determined after additional discovery is concluded.

Further, the size of the FLSA opt-in class is irrelevant to the Rule 23 determination. Courts have declined to find that a small FLSA opt-in class precludes certification of a larger Rule 23 class, noting that individuals who did not opt in may have feared retaliation by their employers. *See Guzman v. VLM, Inc.*, No. 07CV1126 (JG)(RER), 2008 WL 597186 at * 5 (E.D. N.Y. Mar. 2, 2008); *Jankowski v. Castaldi*, No. 01CV0164(SJF)(KAM), 2006 WL 118973, at * 2 (E.D. N.Y. Jan. 13, 2006). Should a large number of class members opt-out, the Court has the option of decertifying the class.

### b.    *Commonality*

Rule 23(a)(2) requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court has explained, "any competently crafted class complaint literally raises common questions," but "[w]hat matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original) (citations omitted). In other words, Plaintiffs' claim must "depend upon a common contention . . . of such a nature that . . . determination of its truth or falsity will resolve an issue that is central to the validity of each one of the [individual plaintiff's] claims in one stroke." *Id.* Notably, courts within the Eighth Circuit have stated that "the commonality requirement imposes a very light burden on a plaintiff seeking to certify a class and is easily satisfied." *Mund v. EMCC, Inc.*, 259 F.R.D. 180, 183 (D. Minn. 2009) (citation and internal quotations omitted).

The Court finds that Plaintiffs have met the commonality requirements. As Plaintiffs note, their claims share virtually identical questions of law and fact. Specifically, the questions of whether Defendants have violated Missouri wage statutes and common law in failing to properly compensate its employees for overtime; whether Defendants' conduct was willful; whether Plaintiffs are entitled to liquidated damages; and whether Defendants' affirmative defense applies. These questions are capable of common resolution because in each case, Defendants applied a uniform policy categorizing the employee as exempt. As such, the resolution of Plaintiffs' claims turns on whether Defendants properly categorized Plaintiffs as exempt. Defendants did not dispute that the commonality element is satisfied.

### c.    *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality means that "other members of the class . . . have the same or similar grievances as the Plaintiffs," in that "they have been subjected to the same allegedly unlawful treatment." *Downing v. Riceland Foods, Inc.*, No. 4:13CV321 CDP, 2015 WL 1299229, at *4 (E.D. Mo. Mar. 19, 2015) (citations omitted). "The typicality and adequacy criteria serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 821 (8th Cir. 2015) (citation omitted). "The burden of showing typicality is not an onerous one." *Paxton*, 688 F.2d at 561.

Defendants argue that Plaintiffs have failed to show that their claims are typical of the class because only thirty-one of the ISL Aides regularly worked in homes by ABC Realty or BKC Properties. As previously discussed, however, Defendants' narrow characterization of the

prospective class is inaccurate.  Defendants applied the same exemption policy to all members of the prospective class, which resulted in Defendants failing to pay them overtime.  The class members all seek the same statutory damages.  Thus, Plaintiffs have adequately demonstrated typicality.  *See Velez v. Majik Cleaning Services, Inc.*, 2005 WL 106895, at #4 (S.D.N.Y. Jan. 19, 2005) ("The named plaintiffs, like members of the putative class, were injured by [Defendant] in the same manner in that they were both underpaid, receiving less compensation than statutorily required.  Thus, the claims of the named plaintiffs and the putative class members arise from the same conduct on the part of [Defendant] and are based on the same legal theories.").

      **d.** *Adequacy*

The adequacy requirement of Rule 23(a)(4) focuses on "whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562-63.

Defendants argue that Plaintiffs cannot show that they would adequately represent the interests of class members because their interests diverge from the class in that only thirty-one ISL Aides actually worked in homes owned by ABC Realty and BKC Properties.  Defendants further argue that, because numerous potential class members have indicated that they do not wish to participate in the lawsuit, Plaintiffs cannot purport to adequately represent the class. Defendants have submitted the declarations of twenty-two individuals, in which the individuals state they do not wish to participate in the instant litigation.  (Docs. 70-7, 70-8.)

As discussed above, the Defendants mischaracterize the class insofar as they define it as the thirty-one individuals working in homes owned by ABC Realty and BKC Properties.

With regard to the declarations submitted, Plaintiffs contend that such "happy camper" declarations are of little use and are often viewed by courts as suspicious. In addition, Plaintiffs state that Defendants have refused to respond to provide copies of the statements as well as the class list and have refused to provide information regarding any employees who may have refused to sign these statements. Plaintiffs note that they also have not had an opportunity to depose the declarants.

Courts have afforded no weight to "happy camper" affidavits at the conditional certification phase. *See Bilskey v. Bluff City Ice, Inc.*, No. 1:13CV62 SNLJ, 2014 WL 320568 at * 3 (E.D. Mo. Jan. 29, 2014); *Creely v. HCR ManorCare, Inc.*, 789 F. Supp.2d 819, 840 (N.D. Ohio 2011) (declining to perform "a detailed review of individualized facts from employees hand-picked by" the employer); *In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, No. H-11-2266, 2012 WL 3308880, * 18 (S.D. Tex. Aug. 10, 2012) ("[B]ecause Plaintiffs have not had an opportunity to depose these declarants, it is inappropriate to afford significant weight to their substance"). The Court finds that the same reasoning applies to class certification in this case and declines to give any weight to the declarations. Not only are these types of declarations inherently suspect, but Plaintiffs have not had the opportunity to depose the individuals and allege that Defendants have not been forthcoming in providing discovery regarding the declarants.

Plaintiffs have demonstrated they are adequate representatives for the putative class members. Plaintiffs' interests, like those of the class, are to establish that Defendants violated Missouri state and common law regarding employment compensation. Plaintiffs have no conflicting interests. In addition, counsel are experienced wage and hour attorneys with class

action experience. Defendants do not challenge Plaintiffs' counsel's qualifications. Thus, the Court finds that Plaintiffs can fairly and adequately protect the interests of the proposed class.

In total, it is the Court's opinion that the prerequisite requirements of class certification set forth in Rule 23(a) are met in this case. The Court therefore turns to an analysis of the appropriateness of class certification under the second and more stringent section of Rule 23.

### 2.      Rule 23(b)(3) Requirements

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' " *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615 (1997) (quoting Fed.R.Civ.P. 23(b)(3)). The Rule 23(b)(3) requirements are commonly referred to as "predominance" and "superiority."

### a.      *Predominance*

Rule 23(b)(3) "permits certification only if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." *Comcast*, 133 S. Ct. at 1430. "The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." *Halvorson v. Auto-Owners Ins. Co*., 718 F.3d 773, 778 (8th Cir. 2013).

But Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen*, 133 S. Ct. at 1196. "What the rule does require is that common questions *predominate* over any questions affecting only individual class members." *Id.* (quoting Fed. Rule Civ. Proc. 23(b)(3)).

Defendants do not offer any argument in opposition to this factor. Plaintiff's class claims may be proved by common evidence regarding Covenant Care's policy of classifying Plaintiffs as exempt from receiving overtime compensation. In this case, questions common to all Plaintiffs will predominate over individual issues that might be raised. Thus, Plaintiffs have shown that common issues will predominate.

**b.** *Superiority*

The second inquiry under Rule 23(b)(3) requires courts to determine whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy," considering:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Plaintiffs argue that the utility of class action treatment in this case is self-evident. Plaintiffs state that damages allowed by Missouri state and common law for unpaid wages are simply too slight to support individual suits. Plaintiffs contend that resolving Plaintiffs' claims on a class-wide basis in a single forum will be efficient and cost-effective. Plaintiffs argue that there are no manageability issues that would preclude certification.

Defendants argue that Plaintiffs have not shown that a class action is the superior means of adjudication, particularly in light of the ongoing FLSA collective action and the small number of opt-in Plaintiffs. Defendants cite *Muecke v. A-Reliable Auto Parts and Wreckers, Inc.*, No. 01C2361, 2002WL1359411, * 2 (N.D. IL June 21, 2001), in support of this argument.

In *Muecke*, the court denied Plaintiffs' Rule 23 motion, finding that the FLSA class was superior to a Rule 23 class based on parallel state law claims:

> Because all of the companies' present and former employees will have the chance to decide whether to join the case, and because those who wish to do so will be before the Court, it makes no real sense to the Court to certify a class that will *automatically* include all of the employees unless they opt out. Under these circumstances, and because of the relatively modest number of existing present and former employees, the Court sees nothing to favor the proposition that we should impose on the collective FLSA claim an overlay of a Rule 23(b)(3) state-law class.

*Id.* (emphasis in original).

Other courts, however, have rejected the reasoning in *Muecke* and have found that a state class action was superior because it allows for a more cost-efficient and fair litigation of common disputes. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D. N.Y. 2008) ("Indeed, it may be that in the wage claim context, the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action, insofar as many employees will be reluctant to participate in the action due to fears of retaliation."); *Cortez v. Nebraska Beef, Inc.*, 266 F.R.D. 275, 293-94 (D. Neb. 2010) ("Although the defendants' employees have received notice of the FLSA action, there may be a number of reasons the employees failed to opt-in to the action that had nothing to do with a belief they were not actually aggrieved").

After considering these factors, the Court believes that the class action mechanism is a superior method of resolving Plaintiffs' claims. The Court further agrees that, "[b]ecause litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually." *Torres v. Gristede's Operating Corp.*, 2006 WL 2819730, at *16 (S.D.N.Y. Sep. 29, 2006). Resolution through a class action would be an

efficient allocation of judicial resources.  Finally, the Court does not have concerns about the manageability of the class action.

The Eighth Circuit has recognized that "a court's inquiry on a motion for class certification is 'tentative,' 'preliminary,' and 'limited.'"  *In re Zurn*, 644 F.3d at 613 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11(1978)).  In consideration of this characterization, the Court will certify this class, but reserve the right to decertify or redefine it at the close of discovery when the factual bases for Plaintiffs' claims are more fully developed. This course of action gives due recognition to the fact that class certification decisions are "necessarily prospective and subject to change," as they are generally made before the close of discovery.  *Id.* at 614.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 73) is **granted in part** and **denied in part**.  Summary judgment is **granted** in favor of Defendants as to Plaintiff Janet Cargill's claims.  Summary judgment is **denied** as to the issue of preemption. A separate Partial Judgment will be issued on this date.

**IT IS FURTHER ORDERED** that Plaintiffs' Request to Continue Defendants' Motion for Summary Judgment pursuant to Rule 56(d) (Doc. 84) is **granted**.  Defendants' Motion for Summary Judgment is **stayed** as to Defendants' defenses of exemption and good faith.

**IT IS FURTHER ORDERED** that the following briefing schedule shall apply: Plaintiffs shall file their Response to Defendants' Motion for Summary Judgment on **March 15, 2016**.  Defendants shall file their Reply on **March 29, 2016**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Class Certification (Doc. 61) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff Tyral Tinsley is designated as representative of the class.

**IT IS FURTHER ORDERED** that The Owens Law Firm and the Employee & Labor Law Group of Kansas City are appointed as class counsel.

**IT IS FURTHER ORDERED** that the parties shall confer and attempt to reach agreement with respect to a proposed form of class notice. Within **14 days** from the date of this Order, the parties shall file a proposed notice, reflecting issues—if any—on which they are unable to reach agreement.

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of February, 2016.